# United States Court of Appeals
### For The District of Columbia Circuit

_____

| | |
|---|---|
| **No. 24-1170** | **September Term, 2024** |
| | EPA-89FR23294 |
| | Filed On: October 24, 2024 |

Cleveland-Cliffs, Inc.,

      Petitioner

    v.

Environmental Protection Agency and
Michael S. Regan, Administrator, United
States Environmental Protection Agency,

      Respondents

------------------------------

Consolidated with 24-1171, 24-1177

      **BEFORE:**    Pillard, Walker*, and Pan, Circuit Judges

## O R D E R

      Upon consideration of the motions for stay pending review, the oppositions thereto, and the replies, it is

      **ORDERED** that the motions for stay be denied.  Petitioners have not satisfied the stringent requirements for a stay pending court review.  See Nken v. Holder, 556 U.S. 418, 434 (2009); D.C. Circuit Handbook of Practice and Internal Procedures 33 (2021).  It is

      **FURTHER ORDERED**, on the court's own motion, that the parties submit, within 14 days from the date of this order, proposed formats and schedules for the briefing of these cases.  The parties are strongly urged to submit a joint proposal and are reminded that the court looks with extreme disfavor on repetitious submissions and will,

---

\* A statement by Circuit Judge Walker, dissenting from this order, is attached.

## United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

_____

**No. 24-1170**                                  **September Term, 2024**

where appropriate, require a joint brief of aligned parties with total words not to exceed the standard allotment for a single brief.  Whether the parties are aligned or have disparate interests, they must provide *detailed* justifications for any request to file separate briefs or to exceed in the aggregate the standard word allotment.  Requests to exceed the standard word allotment must specify the word allotment necessary for each issue.

**Per Curiam**

                      **FOR THE COURT:**
                      Mark J. Langer, Clerk

        BY:   /s/
                      Selena R. Gancasz
                      Deputy Clerk

WALKER, *Circuit Judge*, dissenting:

The EPA's Final Rule likely violates the Clean Air Act by using fewer than 5 sources to set emission floors. *See* 42 U.S.C. § 7412(d)(3)(B). That error likely forces the applicants to incur "nonrecoverable" compliance costs during the pendency of this litigation — an irreparable harm. *See Ohio v. EPA*, 144 S. Ct. 2040, 2053 (2024). Because the equities and public interest also support the applicants, I would grant the stay motions.

\*   \*   \*

The Clean Air Act requires the EPA to set emission standards for sources of hazardous air pollutants. 42 U.S.C. § 7412(d). An emission standard "shall require the maximum degree of reduction in emissions" that is "achievable" after considering "the cost of achieving such emission reduction" and other factors. *Id.* § 7412(d)(2). If a source category contains fewer than 30 sources, the emission standard for existing sources "shall not be less stringent," *id.* § 7412(d), than what has already been "achieved by the best performing 5 sources (for which the Administrator has or could reasonably obtain emissions information)." *Id.* § 7412(d)(3)(B). That likely means that an emission floor under § 7412(d)(3)(B) *requires* 5 sources — 5 of the sources "for which the Administrator has or could reasonably obtain emissions information." In other words, if the EPA wants to regulate under § 7412(d)(3)(B), it needs 5 sources.

The EPA cites *National Lime Association v. EPA*, 233 F.3d 625, 633-34 (D.C. Cir. 2000), for the proposition that the EPA must set standards even if it lacks information for 5 sources. EPA Br. at 15. But *National Lime* does not say that those standards must be floors under § 7412(d)(3)(B). The EPA can still regulate under § 7412(d)(2).

Here, the EPA set several emission floors using fewer than 5 sources. EPA Br. at 15; EPA App'x at 19. That was likely contrary to law. Because the EPA lacked information for at least 5 sources, it was required to set an emission standard using the § 7412(d)(2) criteria, which includes a consideration of costs — something the EPA concedes it did not do. EPA Br. at 24.

Absent a stay, the Final Rule will likely cause irreparable harm by forcing applicants to develop novel technology. To develop that technology, the applicants must start spending money now to get in compliance within 1 to 3 years (as the Final Rule requires). That is money they will not get back, even if they ultimately win. *See Ohio v. EPA*, 144 S. Ct. at 2053.

Though the EPA says compliance costs will be low, its estimate depends on its belief that the applicants already possess most of the technology necessary to satisfy the new floors. 89 Fed. Reg. 23294, 23315 (Apr. 3, 2024); EPA Br. at 36-38. That premise is itself wrapped up in the questionable merits of the EPA's decision to base those new floors on potential outliers — instead of the 5 sources that § 7412(d)(3)(B) likely requires.

The equities and public interest also support the applicants. The EPA found, only a few years ago, that emissions from these applicants posed no risk to public health beyond an ample margin of safety. 85 Fed. Reg. 42074, 42074 (July 13, 2020).

I respectfully dissent.